**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PENNSYLVANIA STATE TROOPERS ASSOCIATION and BRUCE A. EDWARDS,** | : | **No. 1:06-CV-1079** |
| **Plaintiffs** | : | **(Judge Conner)** |
| **v.** | : | |
| **COMMONWEALTH OF PENNSYLVANIA, PENNSYLVANIA STATE POLICE, and COLONEL JEFFREY B. MILLER,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

This action arises from alleged employment discrimination, in violation of Title I and Title II of the Americans with Disabilities Act ("ADA"), by defendant Pennsylvania State Police ("State Police") and its Commissioner, defendant Colonel Jeffrey B. Miller. Before the court are motions to dismiss, one filed by the State Police, one filed by Colonel Miller. The State Police argues that the Eleventh Amendment precludes subject matter jurisdiction over the claims filed against it. Colonel Miller argues that Title II does not provide a cause of action for employment discrimination, thus plaintiffs fail to state a claim under that Title.

The issues presented are: 1) whether the State Police may be sued in this action and 2) whether a claim of employment discrimination is cognizable under Title II. For the reasons that follow, the court answers the first in the affirmative and the second in the negative.

## I. Statement of Facts[1]

As Commissioner of the State Police, Colonel Miller is responsible for establishing rules and regulations deemed necessary for the safe and efficient operation of the State Police. Plaintiffs challenge the continued enforcement of Field Regulation 2-2.11(a)[2] and Administrative Regulation 4-5.07. The amended complaint indicates that both regulations contain the same text. For purposes of this memorandum, the court will refer to Field Regulation 2-2.11(a) because it is quoted in the amended complaint. It states, in pertinent part:

> Members who know that they will be unable to report for duty due to illness or injury they incurred while off duty shall immediately notify their supervisor (or ensure such notification) of the nature of the injury or illness, where they will be recuperating, and the expected date of return of duty.

A state trooper who does not voluntarily disclose the reason for his or her absence under the sick leave policy will be questioned by an appropriate supervisor. If a trooper does not provide the reason for requested sick leave, the trooper is subject to denial of leave and possible disciplinary action including dismissal from service. State troopers have disclosed, and continue to disclose, the reasons for their illness

---

[1] In accordance with the standard of review for a motion to dismiss, the court will present the facts as alleged in the complaint. The statements contained herein reflect neither the findings of the trier of fact nor the opinion of the court as to the reasonableness of the parties' allegations.

[2] The amended complaint contains inconsistent citations for the Field Regulation. In ¶ 14 it is cited as Field Regulation 1-2.11, but in ¶ 15 – in which the regulation is quoted – it is cited as 2-2.11. The court is unable to discern the proper citation and will use 2-2.11, as that is the number attached to the quoted text.

or injury sick leave requests pursuant to Field Regulation 2-2.11(a).

Plaintiff Bruce A. Edwards, President of plaintiff Pennsylvania State Troopers Association, requested that the State Police cease enforcing the sick leave policy to the extent that the disclosure requirement is not job-related and consistent with business necessity. Colonel Miller denied plaintiff Edwards's request. On May 16, 2005, plaintiffs filed an employment discrimination charge with the Equal Opportunity Commission alleging that defendants' continued enforcement of the Field Regulation violates Title I of the ADA. Plaintiffs were issued a right to sue letter on February 24, 2006; their administrative remedies under Title I are exhausted.

Plaintiffs initiated suit in this court on May 26, 2006. (Doc. 1.) They filed an amended complaint on August 22, 2006, stating claims against the State Police and against Colonel Miller in his individual and official capacities. (Doc. 7.) They allege that enforcing Field Regulation 2-2.11(a) violates Title I, 42 U.S.C. §§ 12111-12117, and Part A of Title II, §§ 12131-12134, of the ADA by authorizing inquiry into whether a state trooper requesting sick leave is an individual with a disability. Plaintiffs seek a declaration that Field Regulation 2-2.11(a) violates the ADA and an injunction prohibiting defendants from enforcing the regulation, along with attorneys' fees and costs of litigation.

Defendant State Police filed a motion to dismiss the amended complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) (Doc. 10), arguing that the State Police may not be sued in federal court by virtue of

Eleventh Amendment sovereign immunity. Defendant Miller filed a motion to dismiss the Title II cause of action for failure to state a claim under Federal Rule 12(b)(6). (Doc. 21.) He argues that Title II does not provide a cause of action for employment discrimination. Both motions have been briefed and are ripe for disposition.

## II. Discussion

### A. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges the power of a federal court to hear a claim or case. Ordinarily, the plaintiff bears the burden of proving that federal subject matter jurisdiction is proper. Gould Elecs. Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000). When jurisdiction is challenged on Eleventh Amendment sovereign immunity grounds, however, the burden shifts to the moving party to prove that federal subject matter jurisdiction does not exist. Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 694 (3d Cir. 1996). It is incumbent upon a federal court to "evaluate for itself the merits of the jurisdictional claims." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005) (quoting Mortensen v. First. Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

Motions filed under 12(b)(1) fall into one of two categories. The first type challenges subject matter jurisdiction based on the allegations in the complaint in a "facial attack." Mortensen, 549 F.2d at 891. A facial attack asserts that the plaintiff has failed to properly allege federal subject matter jurisdiction. Id. Upon facial attack, a plaintiff's allegations are accepted as true. Cohen v. Kurtzman, 45 F.

Supp. 2d 423, 428 (D.N.J. 1999). The second type of 12(b)(1) motion challenges the factual basis for federal subject matter jurisdiction. Mortensen, 549 F.2d at 891. Upon factual attack, the plaintiff's allegations are not accepted as true. Id. Instead, the trial court may weigh the evidence and additional pleadings to "satisfy itself as to the existence of its power to hear the case." Id.

The instant 12(b)(1) motion is a facial attack on this court's subject matter jurisdiction. See Int'l Fin. Corp. v. Kaiser Group Int'l Inc. (In re Kaiser Group Int'l Inc.), 399 F.3d 558, 561 (3d Cir. 2005). On the face of the amended complaint, plaintiffs have pled federal question subject matter jurisdiction under the ADA. The State Police challenges its amenability to suit in federal court because the Eleventh Amendment precludes federal subject matter jurisdiction. This court, however, is satisfied that federal subject matter jurisdiction exists because the claims against the State Police fall under the doctrine first articulated in Ex parte Young, 209 U.S. 123 (1908), which provides an exception to the jurisdictional bar of the Eleventh Amendment.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. At a minimum, the Eleventh Amendment stands for two propositions: "first, that each State is a sovereign entity in our federal system; and second, that it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent."

Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996) (internal quotations omitted). Thus, absent an explicit waiver by a state of sovereign immunity to suit in federal court, Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985), the Eleventh Amendment precludes federal subject matter jurisdiction over a state defendant, Seminole Tribe, 517 U.S. at 54.

To ensure the supremacy and enforcement of the United States Constitution and federal law, however, this jurisdictional bar is lifted under two circumstances. Frew ex rel. Frew v. Hawkins, 540 US. 431, 437 (2004). First, Congress's power to enforce § 5 of the Fourteenth Amendment necessarily limits the extent of sovereign immunity embodied in the Eleventh Amendment. Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 364 (2001) (citing Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976)). "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority." Garrett, 531 U.S. at 363. Federal courts have subject matter jurisdiction over suits brought against state defendants under legislation so enacted.

Second, a private party may bring suit against state officials acting in violation of federal law when the suit seeks prospective injunctive relief under the doctrine of Ex parte Young and its progeny. Frew, 540 US. at 437; Garrett, 531 U.S. at 374 n.9 (Though the states are not subject to suit in federal court for money damages, the standards of Title I of the ADA may be enforced "by private individuals in actions for injunctive relief under Ex parte Young."); Seminole Tribe,

517 U.S. at 73; Edelman v. Jordan, 415 U.S. 651, 677 (1974) ("[A] federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief . . . and may not include a retroactive award which requires the payment of funds from the state treasury.") (citations omitted); see United States v. Georgia, 546 U.S. 151, ----, 126 S. Ct. 877, 882 (2006) ("[T]he state defendants have correctly chosen not to challenge the . . . holding that Title II [of the ADA] is constitutional insofar as it authorizes prospective injunctive relief against the State[s].") (Stevens, J., concurring). Accordingly, federal courts have subject matter jurisdiction over a suit against a state defendant in which the relief sought is an injunction requiring state officials to conform their future conduct to the mandate of federal law. Quern v. Jordan, 440 U.S. 332, 337 (1979).

"The State Police, as a Commonwealth party, enjoys sovereign immunity." Pa. State Police v. Klimek, 839 A.2d 1173, 1174 n.1 (Pa. Commw. Ct. 2003). The General Assembly of Pennsylvania has not waived sovereign immunity for purposes of suits like the one at bar. See 1 Pa. Cons. Stat. Ann. §2310; 42 Pa. Cons. Stat. Ann. § 8521(b). Subject matter jurisdiction is nevertheless proper in this court because plaintiffs seek the kind of prospective injunctive relief authorized by Ex parte Young and its successors. The two counts in the amended complaint request 1) a declaratory judgment that the sick leave policy enforced by the State Police violates the ADA and 2) an injunction against the State Police from enforcing the sick leave

policy.[3] (Compl. ¶¶ 23, 29.) Plaintiffs do not seek retroactive monetary damages from the State Police or equitable restitution of any kind. Accepting the allegations in the complaint as true, plaintiffs sue to require the State Police to conform its employment regulations to federal law. This is precisely the kind of suit that falls under the Ex parte Young exception to asserted Eleventh Amendment sovereign immunity. Koslow v. Pennsylvania, 302 F.3d 161, 179 (3d Cir. 2002) ("[F]ederal ADA claims for prospective injunctive relief against state officials are authorized by the Ex parte Young doctrine."). Accordingly, the court concludes that plaintiffs' claims against the State Police are not barred by Eleventh Amendment sovereign immunity. Subject matter jurisdiction is proper, thus the State Police's motion to dismiss will be denied.

### B. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a claim that fails to assert a claim for which relief may be granted. In the context of a motion to dismiss under Rule 12(b)(6), the court must accept as true all of the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom. Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000) (citing Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)). The court will not dismiss a

---

[3] Plaintiffs also request costs and attorneys' fees. (Compl. ¶¶ 23, 29.) This requested relief does not remove the case from the ambit of Ex parte Young. Attorneys' fees and costs are "reimbursement of 'expenses incurred in litigation seeking only prospective relief,' rather than 'retroactive liability for prelitigation conduct.'" Missouri v. Jenkins, 491 U.S. 274, 278 (1989) (quoting Hutto v. Finney, 437 U.S. 678, 695 (1978)).

complaint for failure to state a claim unless it appears beyond a doubt that "no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). "The complaint will be deemed to have alleged sufficient facts if it adequately put the defendants on notice of the essential elements of the plaintiffs' cause of action." Nami, 82 F.3d at 65. The court must grant leave to amend before dismissing a complaint that is merely deficient, unless dismissal without leave to amend is warranted by bad faith, undue delay, prejudice, or futility. See Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000). "'Futility' means that the complaint, [if] amended, would fail to state a claim upon which relief could be granted." Id. at 115.

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Whether this language creates a cause of action for employment discrimination by an employee of a public entity is a question that has split the circuit courts of appeal. Compare Zimmerman v. Or. Dep't of Justice, 170 F.3d 1169, 1178 (9th Cir. 1999) (claim for employment discrimination is not cognizable under Title II) with Bledsoe v. Palm Beach County Soil & Water Conservation Dist., 133 F.3d 816, 820 (11th Cir. 1998) (claim for employment discrimination is cognizable under Title II). The Third Circuit has not addressed the issue. See Koslow, 302 F.3d at 166 n.3.

The Attorney General is charged with promulgating regulations to enforce Title II. 42 U.S.C. § 12134(a). Pursuant to that authority, the Department of Justice ("DOJ") issued 28 C.F.R. § 35.140. This regulation imports into Title II the proscription set forth in Title I of employment discrimination against individuals with disabilities. Specifically, the regulation states that Title I's prohibition of employment discrimination "appl[ies] to employment in any service, program, or activity conducted by a public entity if that public entity is also subject to the jurisdiction of [T]itle I." § 35.140(b)(1). Thus, although the plain text of Title II does not include a specific proscription on employment discrimination by a public entity, the regulation interpreting the statute incorporates one. Plaintiffs encourage this court to adopt the DOJ's interpretation of the statute. (Doc. 24 at 9-11.)

When presented with the issue of the validity of a regulation interpreting a federal statute, a court must begin its analysis with the plain text of the statute. Dir., Office of Workers' Comp. Programs v. Sun Ship, Inc., 150 F.3d 288, 291 (3d Cir. 1998). If, in the statutory text, Congress has directly addressed the question at issue – here, whether Title II creates a cause of action for employment discrimination by a public entity – "that is the end of the matter." Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984). The court must enforce the "unambiguously expressed intent of Congress." Id. at 843. As the final authority on statutory construction, a court must reject administrative regulations that are contrary to clear Congressional intent. Id. at 843 n.9. If, however, the statute is ambiguous or equivocal on the issue, the court shall defer to the interpretation by

the administrative agency charged with enforcing the statute. Id. at 843. The only question for the court is whether the agency's interpretation is based on "a permissible construction of the statute." Id. A regulation will be accorded controlling weight if it is not "arbitrary, capricious, or manifestly contrary to the statute." Id. at 844.

This court concludes that the plain language of Title II does not create a cause of action for employment discrimination, thus the contrary interpretation of the statute by the Department of Justice is due no deference. As numerous courts have observed, the statute contains two clauses. The first states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. Congress did not define "services, programs, or activities," thus courts have read them according to their common, ordinary meaning. Zimmerman, 170 F.3d at 1174; Bledsoe, 133 F.3d at 821-22. The words describe the "outputs" of a public agency, specifically the services, programs, or activities that the public expects to receive from the entity. Zimmerman, 170 F.3d at 1174; Nelson v. Pa. Dep't of Pub. Welfare, 244 F. Supp. 2d 382, 388 (E.D. Pa. 2002); see also Yeskey v. Pa. Dep't of Corr., 118 F.3d 168, 170 (3d Cir. 1997) (approving of using the "ordinary or natural" meaning of service, program, or activity in Title II). "Obtaining or retaining a job is not the receipt of services, nor is employment a program or activity provided by a public entity." McSherry v. Dep't of Labor & Indus., No. 04-0132, 2006 WL 463157 at *10 (M.D. Pa. Feb. 23, 2006) (internal

quotations omitted). Employing workers is considered an "input" to an agency, something necessary for the agency to design and carry out the services, programs, or activities available to the public. Brettler v. Purdue Univ., 408 F. Supp. 2d 640, 655 (N.D. Ind. 2006). Thus, the first clause of the statute does not create a cause of action for employment discrimination.

Those courts holding that Title II encompasses employment discrimination claims rely on the second clause of the statute, which states that no qualified individual with a disability shall "be subjected to discrimination by any [public] entity." Bledsoe, 133 F.3d at 821-22. These courts construe "discrimination" as an umbrella phrase that prohibits all discrimination, of any kind, by a public entity, including employment discrimination. Id. at 822. Reading § 12132 in this manner, however, is not consistent with the plain language of Title II as a whole.

The "qualified individual with a disability" entitled to sue under Title II is:

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

§ 12131(2) (emphasis added). This definition shows that Congress did not intend the second clause of § 12132 to be an all-inclusive provision that encompasses any discrimination by a public entity against any individual with a disability. Rather, Congress echoed the "services, programs, or activities" language in the first clause of § 12132 to circumscribe the type of plaintiff who may bring suit under Title II. As

described supra, "services, programs, or activities," read according to their plain and ordinary meaning, are "outputs" of an agency, not "inputs" like employment. Zimmerman, 170 F.3d at 1176. Although the second clause of § 12132 appears to be all-encompassing, it is limited by Title II's definition of "qualified individual with a disability." Thus, employment discrimination claims against public entities are not cognizable under the second clause of Title II.

This conclusion is consonant with the specific structure of the ADA. Title I of the ADA is devoted solely to employment as it relates to individuals with disabilities. Its "general rule" states that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." § 12112(a). The definition of a "qualified individual with a disability" in Title I is:

> an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of [Title I], consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.

§ 12111(8). When Congress includes particular language in one section of a statute, but not in another section of the same statute, a court may presume that Congress acted intentionally to include or exclude the language. Russello v. United States,

464 U.S. 16, 23 (1983). In Title I, Congress enacted an extensive legislative scheme to prevent employment discrimination against persons with disabilities. Job-related words abound in the text of the proscription against discrimination itself and the definition of an eligible plaintiff under Title I. Title I is labeled "Employment," while Title II is labeled "Public Services." While these section headings alone do not determine congressional intent, they, along with the other language in the statute, are indicative. Zimmerman, 170 F.3d at 1175 (citing Almendarez-Torres v. United States, 523 U.S. 224, 234 (1998)). The text of Title II contains no language to suggest that it is intended to remedy employment discrimination.

Further, when interpreting a statute, a court must look to every word and clause to give full effect to the entire statute. If possible, no provision should be read as "superfluous, void, or insignificant." TRW, Inc. v. Andrews, 534 U.S. 19, 31 (2001). Construing Title II to apply to employment discrimination by public entities would render superfluous, void, and insignificant Title I's clearly delineated remedial scheme for employment discrimination alleged by employees of public entities. The remedies and procedures to enforce Title I are the same remedies and procedures to enforce Title VII of the Civil Rights Act of 1964. § 12117(a); Zimmerman, 170 F.3d at 1177-78. Those procedures include the requirement that a plaintiff exhaust his administrative remedies before bringing suit in federal court. 42 U.S.C. § 2000e-5 applied to Title I by 42 U.S.C. § 12117(a). Title II allows a plaintiff to bring suit directly to a federal court because its provisions are enforced

under the procedures set forth by the Rehabilitation Act of 1973 which does not require exhaustion of administrative remedies. § 12133; Zimmerman, 170 F.3d at 1178. Allowing employees of a public entity to bring suit for employment discrimination under Title II would circumvent the administrative exhaustion requirement imposed under Title I, making it superfluous, void, and insignificant. Id.

Still further, Congress delegated regulatory authority under Title I to the Equal Employment Opportunity Commission ("EEOC"), § 12116, and under Title II to the Attorney General, § 12134(a). When two agencies are authorized to regulate on the same topic, the agencies may, working independently, establish regulations that are in conflict. Zimmerman, 170 F.3d at 1178. To prevent foreseeable conflict, Congress will direct agencies to coordinate their efforts on the topic to "avoid[ ] duplication . . . and prevent[ ] imposition of inconsistent or conflicting standards for the same requirements." E.g., § 12117(b). By implication, the absence of a coordination provision indicates that Congress did not foresee a potential conflict.

For example, Title I of the ADA contains such a coordination provision. Id. It directs the EEOC, as the agency charged with enforcing Title I, and the Attorney General, as the head of the agency charged with enforcing the Rehabilitation Act, to develop procedures that ensure that complaints filed under Title I and under the Rehabilitation Act are treated in a consistent manner. Id. This provision in Title I demonstrates that Congress was aware of the potential problem of conflicting regulations and knew how to prevent it. Logically, there is no coordination

provision in Title I or Title II requiring the EEOC and the Attorney General to avoid duplication and conflicting regulations in the area of employment discrimination because Congress simply did not anticipate that Title I and Title II would overlap in that area of law. Zimmerman, 170 F.3d at 1178. Congress created a cause of action for employment discrimination in Title I only. The court concludes that DOJ's interpretation of Title II, inferring a cause of action for employment discrimination, is manifestly contrary to the plain language of the statute and is not entitled to deference.

The plain language of Title II requires that an aggrieved plaintiff show that he is eligible for the programs, services, or activities provided by a public entity. Employment is not a program, service, or activity that the State Police provides to its troopers. If anything, the troopers are providing their services, as employees, to the State Police as their employer. Thus, the amended complaint fails to allege facts sufficient to state a claim under Title II. The Title II claim against Colonel Miller will be dismissed. Because a claim for employment discrimination is not cognizable under Title II, the court finds that it would be futile to allow Plaintiffs to amend their complaint. See Shane v. Fauver, 213 F.3d 113, 115-16 (3d Cir. 2000).

The court now turns to an issue not explicitly raised in the pleadings, but implicated by their contents. The State Police moved to dismiss the amended complaint for lack of subject matter jurisdiction only. It did not move to dismiss for failure to state a claim under Title II of the ADA, as Colonel Miller did. The court's analysis of Colonel Miller's motion to dismiss is, however, clearly applicable to the

State Police. Thus, the court is faced with the question of whether to dismiss, sua sponte, the Title II complaint as to the State Police.

Federal Rule 12(g) states that "if a party makes a motion under [Rule 12] but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted," with certain exceptions. The defense of failure to state a claim is one of those exceptions. Fed. R. Civ. P. 12(h)(2). Thus, if a party neglects to argue failure to state a claim in a Rule 12 motion, the party may raise the defense in "any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits." Id. The plain text of Rule 12 indicates that the burden is on a moving party to assert the defense of failure to state a claim.

Sua sponte dismissal of a claim is disfavored and inappropriate unless the basis for dismissal is apparent from the face of the complaint. Ray v. Kertes, 285 F.3d 287, 297 (3d Cir. 2002). As with any motion for failure to state a claim, a court considering sua sponte dismissal must satisfy itself "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Bryson v. Brand Insulations, Inc., 621 F.2d 556, 559 (3d Cir. 1980). If a complaint is baldly inadequate as a matter of law, the court may, on its own motion, dismiss the complaint or a claim stated therein.[4]

[4] The Supreme Court in Neitzke v. Williams expressly declined to rule on the propriety of sua sponte dismissals under Rule 12(b)(6). 490 U.S. 319, 329 n.8 (1989).

McKinney v. Okla. Dep't of Human Servs., 925 F.2d 363, 365 (10th Cir. 1991); Guthrie v. Tifco Indus., 941 F.2d 374, 379 (5th Cir. 1991); Omar v. Sea-Land Serv., Inc., 813 F.2d 986, 991 (9th Cir. 1987); Murphy v. Lane, 833 F.2d 106, 106-07 (7th Cir. 1987); Coggins v. Carpenter, 468 F. Supp. 270, 279 (E.D. Pa. 1979); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure – Civil § 1357 (3d ed. 1998). This practice promotes the prompt and efficient disposition of cases and protects valuable judicial resources by expediting the dismissal of cases that lack "a shred of a valid claim." Baker v. Dir., U.S. Parole Com'n, 916 F.2d 725, 726 (D.C. Cir. 1990).

There are procedural safeguards for the plaintiff that a court must extend before sua sponte dismissal is proper. The court must accept all of the plaintiff's allegations as true. Bryson, 621 F.2d at 559. The court must give the plaintiff notice and an opportunity to be heard on the legal viability of his complaint. Pourghoraishi v. Flying J, Inc., 449 F.3d 751, 765 (7th Cir. 2006); Dougherty v. Harper's Magazine Co., 537 F.2d 758, 761 (3d Cir. 1976). This notice and opportunity to be heard may be provided by the act of a single defendant who raises a defense applicable to all defendants. See Pourghoraishi, 449 F.3d at 765-66; Coggins, 468 F. Supp. at 279. In the instant case, plaintiffs have had notice of the defense raised by Colonel Miller and the opportunity to rebut. That a single defendant raised the issue does not alter plaintiffs' responsibility to marshal every fact and argument of law at its disposal to invalidate the defense presented.

The court concludes that sua sponte dismissal of the Title II claim against the State Police is proper. Plaintiffs were on notice of the failure to state a claim defense and the legal arguments in support thereof because Colonel Miller's motion to dismiss was based solely on this ground. The court safely assumes that Plaintiffs would have responded to a 12(b)(6) motion by the State Police with the same law and facts that it applied to Colonel Miller's motion. Plaintiffs' employment discrimination claim under Title II is not legally cognizable and further amendment of the pleadings would be futile.

## IV. Conclusion

For the reasons stated above, the court will deny the motion to dismiss by the State Police, grant the motion to dismiss by Colonel Miller, and dismiss the employment discrimination claims under Title II of the ADA.

S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated: March 20, 2007

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PENNSYLVANIA STATE TROOPERS ASSOCIATION and BRUCE A. EDWARDS,** | : | **No. 1:06-CV-1079** |
| | : | **(Judge Conner)** |
| **Plaintiffs** | : | |
| **v.** | : | |
| **COMMONWEALTH OF PENNSYLVANIA, PENNSYLVANIA STATE POLICE, and COLONEL JEFFREY B. MILLER,** | : | |
| **Defendants** | : | |

**ORDER**

AND NOW, this 20th day of March, 2007, for the reasons stated in the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT:**

1) The motion to dismiss by Defendant Pennsylvania State Police, under Federal Rule of Civil Procedure 12(b)(1) (Doc. 10), is **DENIED**;

2) The motion to dismiss by Defendant Colonel Jeffrey B. Miller, under Federal Rule of Civil Procedure 12(b)(6) (Doc. 21), is **GRANTED** and all claims under Title II of the ADA, stated in Count I of the amended complaint (Doc. 7), are hereby **DISMISSED**.

S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge